# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN GOYETTE HOFFMAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:17-cv-01848 (VLB) |
| | : | |
| v. | : | |
| | : | |
| NUTMEG MUSIC INC., | : | |
| Defendants. | : | September 18, 2018 |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT [DKT. 34].

### I.    Introduction

Plaintiff, Karen Goyette Hoffman ("Hoffman") brings this action against

Defendant Nutmeg Music, Inc. ("Nutmeg") asserting contract and common law

claims.  Hoffman filed her original Complaint in the State of Connecticut Superior

Court on October 4, 2017.  [Dkt. 1-1, at 2]. Nutmeg removed Plaintiff's action to

this Court on November 3, 2017.  [Dkt. 1].  Nutmeg filed a Motion to Dismiss on

November 9, 2017.  In response, Hoffman filed her Amended Complaint on

December 13, 2017.  [Dkt. 28].  Nutmeg filed the instant motion to dismiss on

January 12, 2018.  [Dkt. 34].  For the reasons stated below, the Motion to Dismiss

is GRANTED IN PART AND DENIED IN PART.

Hoffman asserts five claims in her Amended Complaint. She claims

Nutmeg: (1) breached the implied covenant of good faith and fair dealing in the

Employment Agreement by refusing to concur that Hoffman terminated the

agreement for "good reason" under Section 7(c); (2) breached the implied

covenant of good faith and fair dealing in the Employment Agreement by constructively discharging her in order to avoid paying her the severance due if she were terminated "Without Cause" pursuant to Section 7(d); (3) violated New York Labor Law;[1] (4) breached the Stock Purchase Agreement by taking actions diminishing the value of Hoffman's earn-out payments; and (5) was unjustly enriched by the actions it took.

Nutmeg filed this Motion to Dismiss Plaintiff's Amended Complaint on January 12, 2018.  [Dkt. 34].  Nutmeg argues that: (1) Hoffman's claim regarding Section 7(c) of the Employment Agreement uses the obligation of good faith and fair dealing in a manner inconsistent with the contract; (2) Hoffman's second claim improperly imports constructive discharge doctrine into the parties' contractual relationship; (3) New York Labor Law does not apply to Hoffman; (4) Hoffman does not sufficiently plead damages to sustain a claim for breach of the Stock Purchase Agreement; and (5) Hoffman cannot bring a claim for unjust enrichment where neither party disputes the validity of the contracts at issue. For the reasons that follow, Defendant's Motion to Dismiss Counts Three and Five is GRANTED.  Defendant's Motion to Dismiss Counts One, Two, and Four is DENIED.

---

[1] Hoffman withdrew this claim in her Memorandum in Opposition to Defendant's Mot. to Dismiss.  [*See* Dkt. 44 at 1 n. 1].

## II.   Factual Background

The following facts and allegations are taken from Hoffman's Amended Complaint [Dkt. 28] and the exhibits attached to her original Complaint [Dkt. 1-1]. Hoffman, a citizen of Connecticut, was majority owner of a Connecticut corporation named GW Hoffman, Inc. ("GWH") from June 2005 to August 4, 2016. [Dkt. 28 (Plaintiff's Am. Complaint) ¶¶ 6, 8, 10]. GWH was a consulting firm providing marketing, advertising, branding, strategic positioning, and other services. [Dkt. 28, ¶ 7]. Hoffman's husband founded GWH in December 1983 and remained a co-owner until the sale of GWH. [*Id.*, ¶¶ 7,8]. On August 4, 2016, Hoffman and her husband sold GWH to Nutmeg, Inc. ("Nutmeg"). [Dkt. 28, ¶ 10]. Nutmeg is a brand marketing and production studio incorporated in New York. [*Id.*]

The parties executed two agreements for the sale of GWH. These were a Stock Purchase Agreement and an Employment Agreement (collectively the "Agreements"). [Dkt. 28, ¶ 12]. The Stock Purchase Agreement provided the terms by which Plaintiff and her husband would sell all their outstanding shares in GWH to Nutmeg. [*Id.*, ¶ 13]. The Employment Agreement provided the terms by which Nutmeg would hire Plaintiff following the sale. [*Id.*, ¶¶ 11, 13]. The new company formed from the sale was to be known as "Finn Ripley". [*Id.*, ¶ 21].

The Stock Purchase Agreement provided that Plaintiff would receive yearly "earn-out" payments for the first two years after the stock sale, which earn-outs would amount to a percentage of yearly net revenues from existing GWH clients,

known as "GWH Legacy Clients," that Finn Ripley would continue to service. [Dkt. 28, ¶ 25; Dkt. 1-1 (Stock Purchase Agreement) Art. 1, § 1.2(b)]. The Stock Purchase Agreement obligated Nutmeg not to "take any action which [had] the direct or indirect purpose of deferring revenues or otherwise improperly reducing GWH Legacy Client Net Revenues." [Dkt. 1-1 (Stock Purchase Agreement) Art. I, § 1.2(b)(viii)].

The Stock Purchase Agreement also required Nutmeg to hire a number of personnel. The agreement obligates Nutmeg to maintain the employment of certain existing GWH employees. [Dkt. 1-1 (Stock Purchase Agreement) Art. I, § 1.3 (a)]. Nutmeg also agreed to "enter into a consulting agreement with ATB/Lilypad Group[.]" [Dkt. 1-1 (Stock Purchase Agreement) Art. I, § 1.3 (b)].

The Employment Agreement stated that Plaintiff was to be "a member, and have the duties associated with, the senior management of [Nutmeg], managing a group of employees, including, but not limited to . . . serving as co-leader in the development and implementation of a new growth strategy for the new Unified Company." [Dkt. 28 ¶ 27; Dkt. 1-1 (Employment Agreement) § 2]. Plaintiff was to be responsible for "developing and executing a strategic plan, as directed by [Nutmeg CEO] Anthony Spaneo[.]" [Dkt. 28 ¶ 29; Dkt. 1-1 (Employment Agreement) § 2].

Under the Employment Agreement, Hoffman was entitled to severance payments in two instances. First, Hoffman could terminate the Employment Agreement for "Good Reason" if Nutmeg i) materially diminished Hoffman's

"duties, position, authority, or responsibilities" without Hoffman's consent, or ii)

breached any of the material provisions of the Employment Agreement. [Dkt. 28 ¶

30] The Employment Agreement states:

> The Employee may terminate this Agreement for "<u>Good Reason</u>" if she resigns from her employment hereunder following the occurrence of one of the following: (i) The Company materially diminishes the duties, position, authority, or responsibilities of Employee without her consent (provided that, in any such case, Employee shall have provided President, his designee or his successor and/or Board of Directors of Company with written notice of such condition and not less than thirty (30) days to cure such condition), (ii) a material breach by the Company under this Agreement of any of its material provisions (provided that, in any such case, Employee shall have provided the President, his designee or his successor and/or Board of Directors of Company with written notice of such condition and not less than thirty (30) days to cure such condition) . . . If the Employee terminates her employment hereunder for Good Reason pursuant to this Section and to the concurrence of the Company, the Employee shall be entitled to receive such payments/benefits if Company terminated Employee's employment under this Agreement Without Cause.
> [Dkt. 1-1 (Employment Agreement) § 7(c)].

Second, Hoffman could recover severance if Nutmeg terminated her employment

"Without Cause":

> Company may terminate Employee's employment under this Agreement at any time other than (i) for "Just Cause" as described in Section 7(b) above or (ii) upon death or disability as described in Section 7(a) above, by delivery of written notice to Employee specifying that Employee's employment hereunder is being terminated "Without Cause" pursuant to this Section 7(d).
> [Dkt 1-1 (Employment Agreement) § 7(d)].

Hoffman's right to severance payments is stipulated in Section 7(e) of the

Employment Agreement:

> In the event Employee's employment is terminated (i) by the Company "Without Cause," or (ii) by the Employee for "Good Reason," the Company shall continue to pay to you, as severance pay, the base Salary in effect at the time of such termination for the remaining period of the Term . . . Such

**severance payments shall be made in substantially equal installments in accordance with the Company's normal payroll practices during the Severance Period.**
**[Dkt. 1-1 (Employment Agreement) § 7(e)].**

On April 25, 2017, Anthony Spaneo sent Plaintiff a letter stating that Nutmeg wished to extricate themselves from the merger with GWH [Dkt. 1-1, at 147]. The letter communicated that Spaneo felt Hoffman's "philosophy regarding the merger, combined with a fiercely territorial management style has made the concept of Finn-Ripley unworkable in its present state." [*Id.*] Spaneo told Hoffman that if she were "unwilling to discuss a termination of the agreement, we will be forced to move forward with drastic changes based on profitability[.]" [*Id.*]. Among these promised changes were dissolving all aspects of GWH, eliminating GWH employee Dan Walker's position, terminating the agreement with Ann Buivid and the Lilypad Group, terminating Hoffman's entire "interactive sales team," and replacing Hoffman as the head of creative at Finn Ripley [*Id.* at 147-48].

On or prior to the April 25 letter, Spaneo followed through with the intentions expressed in the letter. Before sending the letter, Spaneo conducted high-level conversations about the management and staffing of Finn Ripley without Plaintiff's participation. [Dkt. 28, ¶ 36(c)]. On April 27, 2017, Spaneo terminated the contract of Ann T. Buivid, principal of a consulting firm known as the Lilypad Group. [Dkt. 28, ¶ 36(a)]. On or about May 26, 2017, Spaneo terminated the five members of the interactive team. [Dkt. 28, ¶ 36(b)]. On May 3,

2017, Spaneo's executive committee designee, Dave Rogan, demanded that the interactive team pull conversations away from Plaintiff.  [Dkt. 28, ¶ 36(d)].

On June 21, 2017, Plaintiff requested in writing that Nutmeg cure each of its alleged breaches.  [Dkt. 28, ¶ 37].  As of August 17, 2017, Nutmeg did not take the action Plaintiff requested.  [Dkt. 28, ¶ 39].  Instead, on August 22, 2017, Spaneo informed Plaintiff: "[y]ou are hereby being placed on suspension effective immediately, Tuesday, August 22, 2017, with continuing effect until further notice."  [Dkt. 1-1, at 118]. Between August 22 and September 28, 2017, Nutmeg did not elaborate on the reasons for the suspension.  [Dkt. 28, ¶ 44].

These actions led Plaintiff to terminate the Employment Agreement.  On September 8, 2017, Plaintiff sent Nutmeg notice deeming the Employment Agreement terminated for "Good Reason" or alternatively "Without Cause."  [Dkt. 28, ¶ 48].  Hoffman demanded payment of wages and severance.  [Dkt. 28, ¶ 48]. On September 13, 2017, Nutmeg informed Hoffman that it would be "making no further salary payments."  [Dkt. 28, ¶ 49].

III.   Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc*., 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc*., 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (MRK).

Both Agreements stipulate that they are to be governed and construed in accordance with the laws of the state of New York.  [Dkt. 1-1 (Employment Agreement) § 20; Dkt. 1-1 (Stock Purchase Agreement) ¶ 6.7].

IV.   Discussion

   a. *Count One: Breach of the Implied Covenant of Good Faith and Fair Dealing – Employment Agreement Section 7(c): Termination for "Good Reason"*

The Court first examines Hoffman's claim that Nutmeg acted in bad faith by taking the alleged actions and refusing to concur that "good reason" existed for Hoffman's termination.  Nutmeg argues that the implied covenant of good faith and fair dealing does not create "independent substantive rights" in contracts. [Dkt. 34 at 14 (citing *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-cv-06717 (NSR), 2017 WL 6335905 (S.D.N.Y. Dec. 7, 2017) and *Thompson v. Combined Systems, Inc.*, No. 6:17-CV-7009, 2017 WL 2546611 (W.D.N.Y. June 13, 2017))].  Nutmeg is correct that a plaintiff may not allege a breach of the implied covenant if such a claim either creates a new substantive right under the agreement or is duplicative

of a claim alleging a breach of an express covenant in the contract. *See Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 80 (2d. Cir. 2002). However, Hoffman does not allege a breach of the Employment Agreement on the same facts as her claims for breach of the implied covenant of good faith and fair dealing. Furthermore, Hoffman's claim for a breach of the implied covenant in the Employment Agreement does not create an "independent substantive right" in the contract, for the following reasons.

New York recognizes the covenant of good faith and fair dealing as implied in all contracts. The covenant "encompasses promises which a reasonable person in the position of the promisee would be justified in understanding were included" in a contract. *Moran v. Erk*, 901 N.E. 2d 187, 190 (N.Y. 2008). "'[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Security Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 810 (2d Cir. 2014) (quoting *Moran*, 901 N.E.2d at 190).

"Where a contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d. Cir. 2004) (quoting *Dalton v. Educational Testing Service*, 87 N.E. 2d 289, 291 (1995)); *Fishoff v. Coty, Inc.* 634 F.3d 647, 653 (2d Cir. 2011) (the covenant of good faith and fair dealing requires exercising discretion "reasonably and with proper motive, … not … arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.") (internal

quotations omitted). An implied covenant of good faith and fair dealing applied to the exercise of discretion is "not without limits, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *State Street Bank*, 374 F.3d at 170 (internal quotations omitted).

Nutmeg cites authority to support the proposition that the covenant of good faith and fair dealing never restricts a party's exercise of discretion unless the contract explicitly limits that discretion. [*See* Dkt. 48 (Reply Memorandum in Support of Mot. to Dismiss) at 3-5]. These cases are distinguishable from the present circumstance. In each case, the party asserting the breach of the implied covenant attempted to create an obligation that was inconsistent with the parties' contractual relationship. Furthermore, in none of these instances did the court find that it could reasonably infer bad faith on the part of the party exercising discretion. The Court addresses four of these cases to illustrate the distinction.

Nutmeg cites *Teachers Ins. and Annuity Ass'n of America v. Wometco Enterprises, Inc.*, 833 F.Supp. 344 (S.D.N.Y. 1993). [Dkt. 48, at 4]. In that case, the plaintiff alleged a violation of the implied covenant when Defendant refused to consent to a refinancing transaction. *Id.* at 349. The plaintiff did not allege, as here, a series of disingenuous and subversive actions undertaken in bad faith to circumvent the terms of the contract and deprive the plaintiff of rights under the contract.

Nutmeg also relies on *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004). [Dkt. 48 at 4]. This case

concerned a credit agreement which provided "that neither [Defendant Inverraz] nor its 'Restricted Subsidiaries' could sell, transfer, or otherwise dispose of any assets where, *inter alia*, Inverraz had defaulted on the loans enumerated in the agreements." *State Street Bank,* 374 F.3d at 168.  When Inverraz defaulted on the relevant loans, plaintiff State Street Bank was entitled, by the express terms of the contract, to prohibit sale of assets.  *Id.* at 170.  The Second Circuit's opinion focused on the contractual relationship at issue. Finding a violation of the implied covenant in that scenario would have required State Street Bank to consent to a blatant breach of the contract's terms by allowing Inverraz to sell assets.  In contrast, Nutmeg's disputed conduct includes certain actions which were not within its contractual discretion – such as terminating employees and diminishing Hoffman's duties – and Hoffman's claim does not require Nutmeg to approve of a breach of the Employment Agreement.

     *Cookware Company (USA), LLC v. Austin*, Case No. 15-cv-5796 (DAB), 2016 WL 7378762 (S.D.N.Y. December 8, 2016) (cited in [Dkt. 48 at 2]) also addresses a situation in which finding a violation of the implied covenant of good faith and fair dealing would contravene the express terms of a contract.  The contract at issue gave one party the discretion to set prices, stating that Hudson "shall only use… the prices provided and updated by [Defendant's Agent] Greenpan" and that Hudson "shall not make any change in Greenpan's quotations or terms of sales without the prior written approval of Greenpan."  *Cookware Company (USA)*, 2016 WL 7378762 at *8.  The court did not find that Greenpan took a series of actions that contradicted promises the plaintiff reasonably would have expected when

the contract was executed.  To the contrary, the plaintiff in *Cookware Company (USA)* asked the court to disregard the terms of the contract.

Finally, *Overseas Private Investment Corp. v. Gerwe*, Case No. 12-cv-5833 (RA), 2016 WL 1259564 (S.D.N.Y. March 28, 2016), relies, in part, on the New York Court of Appeals' decision in *Moran v. Erk*, 901 N.E.2d 187, 190 (N.Y. 2008). *Moran* declined to find a breach of the covenant of good faith and fair dealing where a contract granted an attorney discretion to approve of a real estate sale.  *Id.* at 191. The court in *Gerwe* relied on *Moran* and *State Street Bank* in finding that the obligation of good faith and fair dealing did not require the plaintiff to grant the defendant's request for a loan forbearance.  *Gerwe* at *7.  The defendant in *Gerwe* requested the forbearance in order to buy out the minority shareholders of a joint stock company in order to sell the company to pay its debt to the Plaintiff.  *Id* at *3.  Again, *Gerwe* concerns a scenario in which the party asserting the breach of the implied covenant was, in effect, asking the Court to approve a breach of the contract.

In each of these cases, the party invoking the covenant of good faith and fair dealing was asking the Court to interpret the contract in a manner that would frustrate the intentions of the parties.  In *Teachers Ass'n, State Street Bank,* and *Gerwe*, the party invoking the obligation of good faith and fair dealing was asking the other party to consent to a breach of the contract.  In *Cookware Company (USA)*, the plaintiff's interpretation of the obligation of good faith and fair dealing would have negated the contract's language granting the defendant the right to set prices.

The instant motion presents the Court with the reverse scenario–dismissing the Plaintiff's claim of a breach of the obligation of good faith and fair dealing would negate the purpose of the "good reason" clause and would frustrate Plaintiff's right to be compensated for selling GWH and offering her services to Nutmeg. Nutmeg argues that, because the Employment Agreement contains no explicit limitation on the requirement that Nutmeg "concur" with Hoffman that her resignation is for "good reason", this Court must hold that Nutmeg was free to act in bad faith to frustrate Hoffman's ability to achieve the benefits of the Employment Agreement. [Dkt. 48 at 3-6]. The Court declines to do so.

Nutmeg does not establish precedent which binds this Court to so drastically weaken the implied covenant of good faith and fair dealing under New York law. Courts in this circuit continue to hold that the covenant of good faith and fair dealing prohibits a party from exercising its discretion in bad faith. *See Valley Stream Foreign Cars, Inc. v. American Honda Motor Co., Inc.*, 209 F.Supp.3d 547, 555 (E.D.N.Y. 2015) ("Where a contract contemplates the exercise of discretion, courts have equated the covenant of good faith and fair dealing with an obligation to exercise that discretion reasonably and with proper motive") (internal quotations omitted); *Safka Holdings LLC v. iPlay, Inc.*, 42 F.Supp.3d 488, 494 (S.D.N.Y. 2013); *In Re Lehman Brothers holdings Inc.,* 541 B.R. 551, 568 (S.D.N.Y. 2015). New York state courts also uphold the obligation of good faith and fair dealing as a limit on the exercise of contractual discretion. *See, e.g. Legend Autorama, Ltd. V. Audi of America, Inc.*, 100 A.D.3d 714, 716, 954 N.Y.S.2d

141, 143-44 ) (N.Y.App.Div.2d 2012) ("[E]ven an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement.").

Finally, Plaintiff's suggested interpretation of the covenant of good faith and fair dealing diverges from the approach taken in the vast majority of states. *See, e.g. Bohne v. Computer Associates Intern., Inc.*, 514 F.3d 141, 143 (1st Cir. 2008) (Under Massachusetts law, "the doctrine of good faith and fair dealing . . . constrains a party's discretion so that the objectives of the contract [are] realized.") (internal quotations omitted); *Kinzel v. Bank of America*, 850 F.3d 275, 283 (6th Cir. 2017) (Under Utah law, "where a contract grants one party sole discretion in making a decision, but does not provide any express standard for exercising that discretion, the covenant imposes an objective standard of reasonableness.") (internal quotations omitted); *Wilson v. Career Education Corporation*, 844 F.3d 686, 691 (7th Cir. 2016) (the covenant of good faith and fair dealing under Illinois law requires that "discretion be exercised reasonably with proper motive rather than arbitrarily or capriciously or in a manner inconsistent with reasonable expectations."); *Stokes v. DISH Network, L.L.C.*, 838 F.3d 948, 952 (8th Cir. 2016) (Under Colorado law, the "implied duty of good faith and fair dealing requires that a party vested with contractual discretion exercise that discretion reasonably.")(internal quotations omitted); *Kelly v. Skytel Communications, Inc.*, 32 Fed. Appx. 283, 286 (9th Cir. 2002) (Under California law, "the implied covenant of good faith and fair dealing governs SkyTel's exercise of its discretionary powers."); *Scribner v. Worldcom, Inc.*, 249 F.3d 902,

910 (9th Cir. 2001)(Under Washington law, "[g]ood faith *limits* the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses."); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) (Under Florida law, "With the implied covenant, one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations.").

The Implied Covenant of Good Faith and Fair Dealing does not require that Nutmeg concur under <u>any</u> circumstance, but it does prevent Nutmeg from acting in bad faith to induce Hoffman to terminate so that Nutmeg can avoid fulfilling its obligations. The Employment Agreement grants Hoffman the right to terminate for "Good Reason" and provides for the payment of severance if good reason exists. [Dkt. 1-1 (Employment Agreement) § 7(c) ("If Employee terminates her employment hereunder for Good Reason and to the concurrence of the Company, the Employee shall be entitled to receive the payments/benefits to the same extent that Employee would have been entitled to receive such payments/benefits if Company terminated Employee's employment under this Agreement Without Cause."); 7(e)("In the event Employee's employment is terminated (i) by the Company "Without Cause," or (ii) by the Employee for "Good Reason," the Company shall continue to pay to you, as severance pay, the Base Salary in effect at the time of such termination for the remaining period of the Term[.]"). If Nutmeg could unreasonably withhold its concurrence, the Employment Agreement entitles Nutmeg to acquire GWH, frustrate Plaintiff's ability to perform

her duties until she terminates, then refrain from paying Plaintiff as originally agreed.  Hoffman would have no contractual remedy if Nutmeg frustrated Plaintiff's ability to perform, as alleged here.

Defendant, in its Motion to Dismiss, focuses chiefly on Nutmeg's decision to concur or not to concur and ignores the pattern of bad faith Plaintiff alleges. Defendant raises a number of arguments regarding whether Hoffman "actually requested Nutmeg's concurrence", whether Hoffman's notification of termination constituted a "request for concurrence", and whether this concurrence should "coincide with the actual termination of employment."  [Dkt. 35 at 12-13].  This approach artificially narrows the inquiry.

Nutmeg's withholding of its concurrence is salient only in the context of Nutmeg's actions preceding Hoffman's termination of the Agreement.  Nutmeg's refusal to concur is the final link in the causal chain allegedly depriving Hoffman of the fruits of her bargain, but the concurrence decision should not be examined in a vacuum.  The relevant inquiry is whether all of Nutmeg's alleged actions, collectively, resulted in a breach of the implied covenant.  Plaintiff's Amended Complaint states a facially plausible claim that Defendant violated the implied covenant of good faith and fair dealing by refusing to concur that Hoffman terminated the Employment Agreement for Good Reason under Section 7(c).

### b. Count Two - Breach of Implied Covenant of Good Faith and Fair Dealing – Employment Agreement Section 7(d): Termination "Without Cause"

Section 7(d) of the Employment Agreement stipulates that Hoffman's employment will be deemed terminated "Without Cause" if Nutmeg "deliver[s] written notice to [Hoffman] specifying that [Hoffman's] employment hereunder is being terminated "Without Cause." [Dkt. 1-1 (Employment Agreement) § 7(d). Hoffman claims that implied in Section 7(d) "was a requirement not to refuse sending written notice of termination to Plaintiff as part of a bad faith scheme to prevent Plaintiff from realizing her severance benefits." [Dkt. 28, ¶ 72]. Nutmeg argues that Plaintiff's claim that she is entitled to severance because she was "constructively discharged" defies the operative terms of the Employment Agreement. [Dkt. 34, at 16]. Defendant states "Invocation of the implied covenant of good faith and fair dealing as a means of incorporating common law constructive discharge principles into the Employment Agreement would unquestionably be inconsistent with the express terms and structure of the "Good Reason" clause since it would allow for an entitlement to severance pay even in circumstances where "Good Reason" as defined in the Employment Agreement, was not present and regardless of whether the "concurrence" condition was satisfied." [*Id.*].

Constructive discharge occurs when an employer, "rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Pena v. Brattleboro*

*Retreat*, 702 F.d 322, 325 (2d Cir. 1983); *See also Sure-Tan Inv. v. N.L.R.B*, 467 U.S. 883, 894, 104 S.Ct. 2803, 2810 (1984) (holding that an employer violates § 158(a)(3) of the National Labor Relations Act when it "purposefully creates working conditions so intolerable that the employee has no option but to resign – a so-called "constructive discharge."). Courts can apply the constructive discharge test to determine entitlement to severance in cases involving employment contracts. *See Scott v. Harris Interactive, Inc.* 512 Fed.Appx. 25, 28 (2d Cir. 2013) (holding that an employee could pursue a claim for constructive discharge when the employee's contract "stated that if [the plaintiff] were terminated for any reason other than 'cause,' [the defendant] would provide severance benefits of six months' salary and continued health care benefits (or their cash equivalent)."); *Robinson v. Kingston Hosp.*, 55 A.D. 3d 1121, 1123, 866 N.Y.S.2d 387, 388 (N.Y.App.Div.3d 2008) (allowing a plaintiff's claim for constructive discharge when the letter offering Plaintiff employment constituted a contract obligating the employer to pay Plaintiff severance if terminated).

The contractual language of Section 7(c) does not preclude Hoffman from asserting a constructive discharge claim under Section 7(d). Nutmeg argues that allowing the constructive discharge claim to go forward "would unquestionably be inconsistent with the express terms and structure of the "Good Reason" clause since it would allow for an entitlement to severance pay even in circumstances where "Good Reason," as defined in the Employment Agreement, was not present and regardless of whether the "concurrence" condition was satisfied. [Dkt. 48, at 7-8]. The obligation to refrain from inducing Hoffman to

19

terminate the Employment Agreement in order to avoid carrying out the Section 7(d) process for termination is certainly consistent with the other provisions of the agreement. There are actions Nutmeg could take which may not satisfy the "Good Reason" provision of Section 7(c), but could satisfy a constructive discharge claim under Section 7(d). Recognizing this obligation protects Hoffman's rights under Section 7(d) and under the Employment Agreement as a whole.

Nutmeg also argues that the legal standard for constructive discharge requires more egregious conduct than that alleged in Plaintiff's Amended Complaint. [Mot. to Dismiss at 15]. This is a factual argument about whether constructive discharge occurred, not an argument about whether Plaintiff is entitled to pursue her claim as a matter of law. The Court agrees with Plaintiff's statement that "the issue of whether a constructive discharge occurred is a heavily fact-intensive inquiry. It should not be determined at this stage of the proceedings." [Dkt. 44, at 21]. Hoffman has pleaded sufficient facts to sustain her second claim for relief.

### c. Count Three: New York Labor Law

Plaintiff concedes to dismissal of Count Three. [Dkt. 44, at 1 n. 1]. Accordingly, the Court dismisses Count Three on consent without opining on the applicability of New York Labor Law to Plaintiff's facts.

### d. Count Four: Breach of Stock Purchase Agreement

In her fourth claim for relief, Hoffman alleges that Nutmeg improperly reduced GWH Legacy Client net revenues by isolating Hoffman from her employees and the clients.  [Dkt. 28, ¶ 88; Dkt. 44 at 24-25].  The Stock Purchase Agreement provides that Hoffman will receive annual "earn-out" payments equal to a percentage of yearly net revenues from "GWH Legacy Clients."  [Dkt. 1-1 (Stock Purchase Agreement) Art. I, ¶ 1.2(b)].  Furthermore, the agreement prohibits Nutmeg from taking "any action which has the direct or indirect purpose of deferring revenues or otherwise improperly reduc[ing] GWH Legacy Client Net Revenues."  [Dkt. 1-1 (Stock Purchase Agreement) Art. 1, ¶ 1.2(b)(viii)].  Nutmeg argues that Hoffman's Fourth Count does not plead sufficient facts to establish Hoffman's damages.  [Dkt. 34 at 21-23].  Nutmeg argues that "the Amended Complaint is devoid of factual allegations sufficient to establish that any [diminution of value of the Second Year earn-out payment] has actually occurred".  [Dkt. 34 at 21].

Plaintiff need not plead her damages with particularity because Plaintiff seeks only "general damages", as opposed to "consequential damages."  General damages are "the natural and probable consequences of the breach, while special damages are extraordinary in that they do not directly flow from the breach."  *American List Corp. v. U.S. News and World Report, Inc.*, 549 N.E. 2d 1161, 1164 (N.Y. 1989).  "Lost profits may be either general or consequential damages, depending on whether the non-breaching party bargained for such profits and they are the direct and immediate fruits of the contract."  *Biotronik*

*A.G. v. Conor Medsystems Ireland, Ltd.* 11 N.E.3d 676,680 (N.Y. 2014) (*internal quotations omitted*). It is well-settled New York law that the amount or extent of general damages need not be pleaded with particularity. *See Kurak v. Traiche*, 123 N.E. 377, 377, 226 N.Y. 266, 268 (N.Y. 1919).

Hoffman's alleged damages are the natural and probable consequences of Nutmeg's alleged breach of the Stock Purchase Agreement. The alleged damages are not, as Nutmeg argues, "an indirect by-product of Nutmeg's alleged contractual breaches." [*See* Dkt. 48, at 11]. They are somewhat analogous to lost profits. Because the Stock Purchase Agreement expressly prohibits Nutmeg from taking action to improperly reduce GWH Legacy Client net revenues and provides that Plaintiff's yearly earn-out payments are calculated entirely based on that revenue, damages flowing from a breach of that provision are general damages. The Court will allow Hoffman to determine the extent of damages through discovery.

### a. Count Five: Unjust Enrichment

Unjust enrichment is a quasi-contractual claim that is "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned." *IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 907 N.E.2d 268, 274 (N.Y. 2009). "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005);

*IDT Corp.,* 907 N.E.2d at 274 (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)).  A plaintiff may not "seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."  *Clark-Fitzpatrick*, 516 N.E.2d at 193*.*

Neither party disputes the existence or validity of the Employment Agreement or the Stock Purchase Agreement.  The Agreements address Hoffman's employment relationship, her entitlement to severance benefits, and her entitlement to compensation from her sale of stock.  Hoffman cannot plead a claim for unjust enrichment because the parties' dispute is clearly governed by these provisions of the Agreements.  Count Five is dismissed.

V.     Conclusion

For the foregoing reasons, Defendants' [Dkt. 34] Motion to Dismiss the [Dkt. 28] Amended Complaint is GRANTED as to Counts Three and Five and DENIED as to Counts One, Two, and Four.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: September 18, 2018